UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| ELECTRIC INSURANCE COMPANY, et al. | : | CASE NO. C-1-00-1056<br>JUDGE SUSAN J. DLOTT |
| | : | |
| Plaintiffs | : | **DEFENDANT WALLACE'S MOTION TO RECONSIDER, MOTION FOR SUMMARY JUDGMENT AND RESPONSE TO THE MOTION FOR SUMMARY JUDGMENT FILED BY CHRYSLER INSURANCE CO.** |
| vs. | : | |
| PHYLLIS H. WALLACE, EXECUTRIX OF THE ESTATE OF CHRISTOPHER S. WALLACE, et al. | : | |
| Defendants. | : | |

Now comes Phyllis H. Wallace, Executrix of the Estate of Christopher S. Wallace and hereby moves the court to reconsider its order of November 4, 2002, to grant summary judgment to defendant Wallace on her cross claim against Chrysler Insurance Company and to deny Chrysler's motion for summary judgment filed November 4, 2003.

Edwin L. Hoseus, Jr.    (#0008562)
Attorney for Defendant Phyllis Wallace
Executrix of the Estate of Christopher S. Wallace
741 Milford Hills Drive
Milford, Ohio 45150
(513) 248-0317

Carl W. Zugelter    (#0007865)
Attorney for Defendant Phyllis Wallace,
Executrix of the Estate of Christopher S. Wallace
1285 W. Ohio Pike
Amelia, Ohio 45102
(513) 752-2338
(513) 752-2234 fax

## MEMORANDUM

## FACTS

This declaratory judgment action was filed by Electric Insurance Co. on December 27, 2000 to determine what coverage, if any, was available to the Estate of Christopher Wallace as a result of his death in a motor vehicle accident that occurred in April 16, 1999. (Doc. 1)

The complaint averred *inter alia* that Chrysler was responsible to provide both liability coverage and uninsured/underinsured motorist coverage under the policy of insurance that it issued to Al Castrucci, Inc.. (Doc.1, para. 14, 15)

On February 12, 2001 defendant Wallace filed a cross-claim against Chrysler seeking *inter alia* a declaration that Chrysler was responsible to provide both liability and uninsured/underinsured motorist coverage under the subject policy. (Doc. 3, para. 24, 26) On April 12, 2001 Wallace filed an action against the tortfeasor Downey and others in Clermont County, Ohio requesting money damages *inter alia* against Downey. (Hoseus affidavit)

On April 12, 2001 counsel for Phyllis Wallace forwarded a letter to Clifford C. Masch, Esq., the attorney for Chrysler Insurance Company, requesting consent to settle the estate's claims against the tortfeasor for the sum of $25,000,00 from his liability carrier, State Farm Insurance and $75,000.00 from Allstate Insurance Company the UM/UIM carrier for defendant's decedent. (Hoseus affidavit Ex. B)

On September 5, 2001 attorney Masch forwarded a letter to defendant's counsel consenting to acceptance of the liability limits offered by the tortfeasor's carrier and expressing no objection to the acceptance of the funds from the uninsured motorist carrier. (Hoseus affidavit Ex C)

On January 24, 2002 Wallace executed a release in favor of Downey having received the full policy limits of $25,000.00 from Downey's liability carrier and $75,000.00 from the uninsured carrier for Christopher Wallace. (Hoseus Affidavit)

1

## ARGUMENT

For the reasons set out below Defendant Wallace urges the court to reconsider its order of November 4, 2002, deny the motion for summary judgment filed on behalf of Chrysler Insurance Company on November 4, 2003 and grant summary judgment on behalf of defendant Wallace against Chrysler, finding that Wallace is entitled to UM/UIM coverage of $1,000,000.00 under the underlying policy and $10,000,000.00 excess coverage by operation of law.

In its latest motion for summary judgment, Chrysler argues that summary judgment must be granted against Wallace because there is no presently cognizable claim against Downey for the April 16, 1999 collision. Chrysler explains that there is no claim against Downey because Wallace executed a general release in favor of Downey and dismissed her lawsuit for money damages pending in Clermont County against Downey. (Doc 55 p. 2, 3) Chrysler then argues that since Wallace released Downey without exhausting the Chrysler liability coverage ($1,000,000.00 underlying, $10,000,000.00 excess) that it is entitled to set that amount off against any claim for uninsured motorist coverage. (Doc. 55 p.5) In essence, Chrysler is arguing that there is no liability coverage because the settlement to which it consented under the provisions of its UM/UIM policy released the tortfeasor and no action can be maintained against him. Then Chrysler argues that by releasing the tortfeasor without collecting the $1,000,000.00 available under the Chrysler liability coverage Wallace violated the exhaustion clause of the UM/UIM coverage under the Chrysler policy and Chrysler is entitled to what would amount to a full set-off of the UM/UIM coverage. (Doc. 55, p.5)

## MOTION TO RECONSIDER

This court's order granting and denying summary judgment was entered on November 4, 2002. (Doc. 35) Although Wallace executed a release in favor of Downey, State Farm and Allstate on January 24, 2002 this court was apparently not made aware of the dismissal or its potential ramifications prior to the order.

2

The original motions for summary judgment and responses predated the settlement however, nine months elapsed between the settlement with Downey and this court's order. During this period of time the parties filed four addendums and supplements to the motions for summary judgment without mentioning the settlement or arguing its effect. (Doc. 31, 32, 33, 34)

Today, this court must address its prior decision based upon the newly presented evidence and arguments of the parties. Thus it is appropriate to re-examine the entire order of November 4, 2002.

### DEFENDANT WALLACE IS ENTITLED TO UM/UIM COVERAGE UNDER THE CHRYSLER POLICY

Assuming arguendo that Chrysler is correct in its assertion that there is no liability coverage that can or must be provided to Downey as a result of the release and dismissal, then the Estate of Wallace has a claim under the uninsured/underinsured provisions of the Chrysler policy providing $1,000,000.00 in underlying coverage and $10,000,000.00 in excess coverage implied by law.

The event that triggered uninsured motorist coverage under the Chrysler policy occurred when Chrysler denied coverage under the liability portion of the policy. The UM/UIM endorsement defines an uninsured motor vehicle in the following manner:

> "F.  ADDITIONAL DEFINITIONS
> As used in this endorsement:...
> 3.      "Uninsured motor vehicle" means a land motor vehicle or trailer:..
>         c.      For which an insuring or bonding company denies coverage..."
> (Doc. 25, tab 2, p3)

Once the liability carrier denies coverage the claim becomes an uninsured motorist claim under the clear terms of the policy. It is not necessary that a court determine that the liability policy does not provide coverage, only that coverage be denied by the liability carrier. This is appropriate because the UM/UIM carrier will ultimately bear the loss if there is no liability coverage and thus it allows the UM/UIM carrier to contest the liability carriers denial of coverage in a declaratory judgment action. Furthermore, it is part of the bargained for consideration that the insured receives for payment of a

3

premium. If the liability carrier for a tortfeasor denies coverage for any reason the insured then turns the claim over to his carrier under Section F(3)(c) *see above* and the carrier has to deal with this as an uninsured claim. Thus when Chrysler denied coverage under the liability portion of the policy it triggered coverage under the UM/UIM portion. Chrysler first denied coverage in its letter of August 1, 2000 to Edwin Hoseus. (Affiant Hoseus Ex. "A") It continued to deny coverage when it filed an answer to plaintiff's complaint and Wallace's crossclaim. Chrysler further denied liability coverage in its motion for summary judgment (Doc. 25, p.5,6,7) and its responses prior to the Wallace settlement with Downey. (Doc. 29) When Chrysler elected this defense it forced the Wallace claim under the UM/UIM coverage as provided by Section F(3)(c) of the uninsured motorist endorsement. These facts were not brought before the court prior to its decision however, they now become relevant given Chrysler's position that it has no duty to pay under the liability portion of the policy.

Ohio recognizes that denial of a claim made by a passenger in a motor vehicle under the liability provision of an automobile policy may trigger an uninsured or underinsured claim by that passenger under the UM/UIM provision of the same policy.

In State Farm Auto. Ins. Co. v Alexander, 62 Ohio St. 3d 397 (Ohio, 1992) the Supreme Court decided a case where an insured was a passenger in her own motor vehicle that was involved in a one-car accident. The insurance carrier denied the liability coverage because of a household exclusion in the policy. The driver and the passenger were members of the same household. The court held that although the household exclusion was valid under the liability coverage it became an uninsured motorist claim when the insurance company denied coverage. In imposing uninsured motorist coverage the court held the following:

> Thus, the intent of the statue is to provide uninsured and underinsured motorist coverage for injured persons who have a legal cause of action against a tortfeasor but who are uncompensated [***5] because the tortfeasor is either (1) not covered by liability insurance or (2) covered in an amount that is less than the insured's uninsured motorist coverage" Id 400

4

In the instant case Chrysler chose the position that the tortfeasor Downey was not insured by Chrysler's liability coverage and thus the uninsured/uninsured motorist coverage must be extended to Wallace.

### THE EXHAUSTION CLAUSE DOES NOT APPLY TO THE CHRYSLER LIABILITY COVERAGE

In the last sentence of its brief Chrysler argues that the exhaustion clause in the UM/UIM policy should act as a set-off since Wallace did not collect the full limits of the Chrysler liability policy. Wallace did collect the full liability limits of the State Farm policy which was the only applicable policy. Chrysler is entitled to deduct that amount, $25,000.00, under Secion D(3) (Doc. 55, p.5) of its UM/UIM coverage that provides the following:

> "3.    With respect to coverage provided under paragraph F.3.b. of the definition of 'uninsured motor vehicle' the limit of insurance shall be reduced by all sums paid for 'bodily injury' by or on behalf of anyone who is legally responsible" (Doc. 25, tab 2, p.2)

However, the exhaustion clause upon which Chrysler relies does not apply to the Chrysler liability coverage because it was not an "applicable liability policy" required to be exhausted by the settlement. The exhaustion clause of the UM/UIM endorsement provides in pertinent part the following:

> "A.    COVERAGE
> 2.    We will pay under this coverage only if a. or b. below applies:
>     a.    The limits of any applicable liability bonds or policies have been exhausted by judgments or payments;" (Doc. 25, tab 2, p.1) - underline added

It is clear that Downey's State Farm policy was an applicable policy, State Farm had not denied coverage and it was exhausted by the payment of $25,000.00. However, the same does not hold true for the Chrysler policy.

5

In this case Chrysler had a dual role it provided liability coverage to the operator of the vehicle and it provided UM/UIM coverage to Christopher Wallace under Section B(3) as an "occupant" of a covered auto.

### B. WHO IS AN INSURED

> 3. Anyone else "occupying" a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, loss or destruction." (Doc. 25, tab 2, p.1)

Thus, Christopher Wallace was an insured under the Chrysler UM/UIM endorsement.

When Chrysler denied liability coverage it told its insured Wallace in no uncertain terms that the liability policy was not applicable. If the Chrysler liability policy was not applicable then the exhaustion clause could not be triggered with respect to the Chrysler UM/UIM policy. Chrysler cannot maintain that it was speaking only as the liability insurer when it advised Wallace that the policy did not apply. It was also speaking as Wallace's insurer, advising its insured that the liability coverage did not apply. The course of events transpired in the following manner. Chrysler advised Wallace that the liability coverage did not apply. Chrysler then granted Wallace consent to settle with the tortfeasor and exhaust the only applicable liability policy for $25,000.00. When the Court entered its Order of November 4, 2002 it was not aware of any of these circumstances, nor were the implications of these events argued to the Court.

When Chrysler denied coverage, consented to settlement and when Wallace settled with and released Downey the parties effectively agreed under the terms of the policy that this was now an uninsured claim.

6

## EVEN IF THIS COURT FINDS THAT WALLACE'S SETTLEMENT CONSTITUTED A FAILURE TO EXHAUST THE CHRYSLER POLICY THERE IS NO PREJUDICE TO CHRYSLER.

In order for an insurance company to deny coverage for failure of the insured to meet a conditional or term of the policy the insurance company must be prejudiced by the alleged breach. Ferrando v. Auto-Owners Mut. Ins. Co., 98 Ohio St. 186, 205-206 held the following:

> "Accordingly, we hold that when an insurer's denial of UIM coverage is premised on the insured's breach of a prompt-notice provision in a policy of [*206] insurance, the insurer is relieved of the obligation to provide coverage if it is prejudiced by the insured's unreasonable delay in giving notice. An insured's unreasonable delay in giving notice is presumed prejudicial to the insurer absent evidence to the contrary."

In reaching this conclusion the court reviewed case law in other jurisdictions noting the following:

> "Some courts have looked to Restatement of the Law 2d, Contracts (1981) Section 241, 'Circumstances Significant in Determining Whether a Failure is Material' to determine whether a particular breach was material, so that it discharges a UIM insurer from the obligation to provide coverage. Among the circumstances for consideration are "the extent to which the injured party will be deprived of the benefit which he reasonably expected, " Section 241(a), and "the extent to which the party failing to perform * * * will suffer forfeiture," Section 241(c). See Hernandez v. Gulf Group Lloyds (Tex.1994), 875 S.W.2d 691, 693, 37 Tex. Sup. Ct. J. 731 ("The less the non-breaching party is deprived of the expected benefit, the less material the breach"; when the UIM insurer is not prejudiced by the breach, the insured's breach is not material)." Id 191

It is clear that the purpose of an exhaustion clause is to protect the UM/UIM carrier from a prejudicial settlement between its insured and the tortfeasor's carrier. In this case the parties are identical. Both the liability and UM/UIM coverages are issued under the same policy number. Thus there can be no prejudice to Chrysler because it will be required to pay the same amount whether it is under the liability coverage or the UM/UIM coverage. Simply put if Wallace's claim has a value of $500,000.00 Chrysler will be forced to pay that amount whether it is from the liability coverage or the UM/UIM coverage.

## SUMMARY JUDGMENT IF FAVOR OF WALLACE UNDER THE UM/UIM COVERAGE IS NOW APPROPRIATE

In the order granting and denying summary judgment this court found that there was no UM\UIM coverage because there was liability coverage in the amount of $1,000,000.00 in underlying insurance and $10,000,000.00 in umbrella insurance. Since this sum was the equivalent of the UM coverage then no UM coverage existed.

> "As noted above, the UM/UIM endorsement in the Commercial Lines Policy limited coverage to "uninsured vehicles," namely those vehicles for which the sum of <u>liability coverage applicable at the time of the accident</u> is "less than the Limit of Insurance of this coverage." (Doc. #24 exh. C at 022.) The Chrysler policies provide up to $11,000,000. in liability coverage. The Chrysler umbrella/excess policy limits coverage at $10,000,000. Consequently, the Taurus was not an uninsured vehicle under the Chrysler policy, and the Wallace estate may not collect UM/UIM benefits under the umbrella/excess policy." (Doc. 35, p.9) underline added

Had the court been aware of the terms of the UM/UIM endorsement and the settlement of the parties it would have been free to conclude that the liability coverage did not apply and the claim was an uninsured/underinsured claim. Wallace urges the Court that this should be the result today.

## WALLACE COMPLIED WITH ALL REQUIREMENTS OF THE CHRYSLER UM/UIM ENDORSEMENT

Under the uninsured motorist coverage, Wallace would have been within her rights to settle her claim against Downey, State Farm and Allstate within thirty days of the April 12, 2001 letter requesting consent to settle. Upon receipt of that letter, under the terms of the uninsured/underinsured provisions of the policy Chrysler had the option to advance the $25,000.00 offered to Wallace and refuse to grant consent to settle or to permit the settlement and release of the tortfeasor. By advancing the funds under it's UM/UIM coverage Chrysler could have preserved its claim against the tortfeasor. Chrysler chose not to do so.

When Wallace requested consent to settle on April 12, 2001 Downey was a person from whom Wallace was "legally entitled to recover" described in § A of the Ohio Uninsured Motorist Coverage Endorsement. (Doc 25, tab 2, p.1) Downey was the defendant in a wrongful death and survivor action in Clermont County, Case No. 2001CVH00398. No statute of limitations had run against Downey and the case was not dismissed until Chrysler had given its consent to settle. Chrysler could have advanced the $25,000.00 and preserved its right against the operator or insurer of the vehicle under § 2 (C) (Doc. 25, tab 2, p.2) of its uninsured motorist contract; it chose not to do so. Chrysler argues that it did not direct Wallace to execute a release, dismiss her claim and allow the statute of limitations against Downey to expire. (Doc. 53, p. 3,4) Whatever value this proposition may have as it relates to the liability coverage it is irrelevant with respect to the UM/UIM coverage. Wallace did not allow the statute of limitations for the wrongful death claim to expire against Downey. She protected the statute and preserved the rights of Chrysler by filing the wrongful death/survivor action within the applicable time limits in the Clermont County Common Pleas Court. Had Chrysler chosen to advance the funds and proceed against Downey, State Farm and Allstate the vehicle to preserve its rights was in place. Although Chrysler did not direct Wallace to settle and release the tortfeasor it certainly consented to the settlement and release of the tortfeasor under its own UM/UIM endorsement.

## CONCLUSION

New evidence and arguments of the parties require this court to reconsider its order of November 4, 2002. Chrysler's denial under the liability coverage triggered coverage under Section F(3)(c) of the UM/UIM endorsement. Had the court been aware of the settlement by Wallace with the consent of Chrysler prior to its original Order it would have been free to determine that the claim should be treated as a UM/UIM claim. Chrysler cannot claim a set-off under the UM/UIM coverage for failure to exhaust under its own liability coverage because by its own statements the liability policy was not applicable. Furthermore, Chrysler can show no prejudice for failure to exhaust since Chrysler

will be liable to pay the same amount under one or the other coverages. Thus Wallace prays this court to declare that the Estate of Wallace is covered under the UM/UIM endorsement of the subject policy for $1,000,000.00 in underlying coverage and $10,000,000.00 by operation of law.

<table>
<tr><td>

Edwin L. Hoseus, Jr.                    (#0008562)
Attorney for Defendant Phyllis Wallace
Executrix of the Estate of Christopher S. Wallace
741 Milford Hills Drive
Milford, Ohio 45150
(513) 248-0317

</td><td>

Carl W. Zugelter                    (#0007865)
Attorney for Defendant Phyllis Wallace,
Executrix of the Estate of Christopher S. Wallace
1285 W. Ohio Pike
Amelia, Ohio 45102
(513) 752-2338
(513) 752-2234 fax

</td></tr>
</table>

### CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served upon Clifford C. Masch and Brian A. Meeker, Attorneys for Defendant Chrysler Insurance Co., 1400 Midland Building, 101 Prospect Avenue West, Cleveland, OH 45115-1093, Ronald B. Lee, Laura M. Faust and Mark A. Ropchock, Attorneys for Defendant Electric Insurance Company and National Union Fire Insurance Company, 222 South Main Street, Suite 400, Akron, OH 44308, by ordinary U.S. mail this /4/ day of May, 2004.

Carl W. Zugelter                    (#0007865)
Attorney for Defendant Phyllis Wallace