UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| ELECTRIC INSURANCE COMPANY, ET AL. | ) ) ) | CASE NO.  C-1-00-1056 |
| Plaintiffs, | ) ) ) | JUDGE: SUSAN J. DLOTT |
| v. | ) ) ) ) | **DEFENDANT CHRYSLER INS. CO.'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT ON THE CROSS-CLAIM (DOC 53), AND BRIEF IN OPPOSITION TO DEFENDANT WALLACE'S MOTION TO RECONSIDER AND MOTION FOR SUMMARY JUDGMENT (DOCS 58 & 59)** |
| PHYLLIS H. WALLACE, EXECUTRIX OF THE ESTATE OF CHRISTOPHER S. WALLACE, ET AL. | ) ) ) ) ) | |
| Defendants. | ) | |

**I.    INTRODUCTION**

Chrysler Insurance submits that based on the court's November 2002 order (Doc 35), and the subsequent dismissal of Electric Insurance Company (Doc 61), all issues fairly presented by the pleadings have been decided and a final judgment order may now be entered. While the November 2002 order (Doc 35) does not specifically address Wallace's cross-claim for damages against Chrysler, the cross-claim simply does not survive the court's ruling regarding the coverage obligations of the insurance defendants. There is no basis for Wallace's further pursuit of the cross-claim because (a) Wallace's tort claims against Downey are not a part of this litigation (and never have been); and (b) this court, by its November 2002 order, determined as a matter of law that "neither Chrysler policy provided UM/UIM coverage to Wallace." Wallace's claim for damages against Chrysler is moot, and this case should be ordered dismissed.

Similarly, Wallace's motion for reconsideration is without merit and should be overruled. As discussed herein, the motion for reconsideration is both untimely and unsupported by the facts. Wallace now seeks the right to pursue a damages claim directly against Chrysler on an "<u>un</u>insured motorist" theory, despite this court's November 2002 finding that the tortfeasor driver

had liability coverage available to him at the time of the accident that exceeded the UM/UIM limits on Chrysler's policy. This court has already ruled that Chrysler has no coverage obligation under its UM/UIM provisions. This court need not reinvent the wheel in order to find insurance coverage that Wallace abandoned when she discharged the tortfeasor from further liability.

## II.    WALLACE'S CROSS-CLAIM FOR DAMAGES IS MOOT

Wallace's cross-claim (Doc 7) is for a declaration that the Chrysler policies provided liability coverage to Brian Downey and UM/UIM coverage to Wallace (¶ 24). Wallace also seeks "a sum of money to be determined by the Court to compensate the heirs for the death of Christopher S. Wallace" (¶28). However, any claim for damages in the present suit can only be viewed as pertaining to Wallace's claim for underinsured motorist coverage. Because the court determined that Downey was not uninsured or underinsured at the time of the accident, Chrysler has no obligation to provide underinsured motorist coverage, and the cross-claim for damages is moot.

Wallace acknowledges she has no viable claim against Downey, but posits that her discharge of Downey from tort liability should be excused because of Chrysler's consent to the proposed settlement under the provisions of its UM/UIM policy. As set forth in Chrysler's original brief, this position flies in the face of well-established precedent barring direct actions against a liability insurance carrier. Wallace has never obtained a judgment against Downey, nor has Downey's liability been determined. As Wallace must acknowledge, the facts of the subject accident raise a very significant question of comparative negligence on the part of Wallace's decedent.[1] Wallace's position that Chrysler would not be prejudiced if forced to defend against a direct action, with Downey completely discharged form tort liability, is totally

---

[1] After an evening of drinking together at several taverns, Christopher Wallace freely turned the keys to his rental vehicle over to his friend, Brian Downey. Wallace's knowledge of his friend's intoxication is irrefutably implied by the fact that the two men consumed alcohol together in the hours preceding the accident.

2

untenable. "[T]he policy of excluding any reference to the existence of insurance in an action to determine liability for personal injury would be circumvented by permitting the injured person to sue the insurance company and could constitute a prejudicial or harmful effect against the insurer." *Chitlik v. Allstate Ins. Co.*, 34 Ohio App.2d 193, 197-198 (1973).

At the status conference on February 13, 2004, the court questioned whether the viability of Wallace's tort claims against Downey is an issue properly before the court. Indeed, Wallace's rights against Downey are questions of state law over which this court has no jurisdiction. Wallace's tort claims have never been joined with the declaratory judgment and underinsured motorist claims presented in the case at bar. Wallace wants to argue that Chrysler's consent to her settlement negates her release of Downey from further liability, but this argument is not a matter for this court to decide.

Nonetheless, the flaw in Wallace's argument is apparent: Chrysler could not have waived defenses on behalf of Downey, a person with whom Chrysler had no relationship.[2] Indeed, Downey never requested coverage under the Chrysler policy, nor was defense of the state court action ever tendered to Chrysler. Wallace totally and forever discharged her liability claim against Downey, while at the same time seeking a declaration that Chrysler owed liability coverage. This court agreed with Wallace's position and found Chrysler to be a liability insurer of Downey, but, there is no longer any tort liability. In other words, Downey is a covered person, but there is no longer a viable cause of action for him to be covered against. This is true not because of any action or inaction on the part of Chrysler, but solely because of Wallace's total release and complete discharge of Downey from any further liability.

By its November 2002 order, this court issued the declaration Wallace demanded in paragraph 24 of her cross claim: liability coverage under the Chrysler policy was available to

---

[2] An underinsured motorist carrier's consent to a claimed insured's proposed settlement with the responsible party equates to a waiver of potential subrogation rights against the tortfeasor motorist. In the absence of express language so providing, it would be erroneous to construe the consent as anything more.

3

Downey at the time of the subject accident. This ruling should not now be contorted to allow Wallace to have a claim for damages directly against Chrysler.

### III. WALLACE'S MOTION FOR RECONSIDERATION IS UNTIMELY

Wallace submits that the court "must address" its November 2002 order "based upon the newly presented evidence and arguments of the parties." The newly presented evidence is the fact that Wallace discharged Downey from liability while simultaneously asking this court to declare that Chrysler owes Downey a defense and indemnification. The newly presented argument is that Wallace should be permitted to pursue an <u>un</u>insured motorist claim despite having settled with Downey for the limits of his automobile liability policy.

The court's authority for reconsidering an order or opinion is found in FRCP 60. Specifically, because of Wallace's reference to new evidence, the motion for reconsideration falls under FRCP 60(b)(2). In regard to motions for reconsideration on such grounds, the rule provides that the motion "shall be made . . . not more than one year after the judgment, order, or proceeding was entered or taken." FRCP 60(b). Wallace's motion for reconsideration falls well outside the one-year time frame permitted by rule and should thus be overruled as untimely.

Of further note, the court should recognize that Wallace exercised her right to be heard on the insurance coverage issues by filing a brief in support of Plaintiff's motion for summary judgment and a brief in opposition to Chrysler's (Doc. 28). Wallace's brief was filed on December 26, 2001, just a few weeks before Wallace's execution of a release in favor of Downey. Clearly, Wallace knew the facts pertaining to her discharge of Downey from further tort liability at the time the court was originally considering the insurance coverage issues and there is no compelling reason why this "new" evidence could not have been timely presented.[3] If Wallace no longer intended to pursue liability coverage after her release of Downey, she had nearly eleven months to so advise the court. Likewise, Wallace had ample opportunity after the

---

[3] In contrast, it was only after the court's November 2002 order that Chrysler learned of Wallace's total discharge of Downey from further tort liability.

4

November 2002 order to enlighten the court as to the changed posture of the liability claim. Wallace knew of Chrysler's position regarding the effect of Downey's release from liability as early as December 2002 (See letter to Wallace's counsel, attached as Ex. A). Wallace was certainly aware of Chrysler's position regarding Downey's discharge from liability in advance of the November 2003 anniversary of the court's order resolving the coverage issues. There is no reason Wallace could not have moved for reconsideration well within the one-year period permitted under FRCP 60(b). Wallace can present no compelling argument to overcome the prohibition against untimely motions for reconsideration and her motion must be denied.

IV.     **WALLACE'S CLAIM FOR UNINSURED MOTORIST COVERAGE IS NOT SUPPORTED BY THE FACTS**

Wallace's motion for reconsideration does not ask the court to address an error in law, but instead requests an imaginative reinterpretation of the facts in order to circumvent the November 2002 order. Wallace now states a right to <u>un</u>insured motorist coverage - - a curious position given that Wallace has freely accepted the benefits of automobile liability coverage available to Downey under his State Farm policy. Wallace's previous position in this regard was that the coverage under Downey's personal auto policy was inadequate, thus arguably giving rise to an <u>under</u>insurance claim. Simultaneously, Wallace argued that Downey was entitled to indemnification under the liability provisions of Chrysler's policy. Despite the fact that liability coverage was (a) inarguably available to Downey under the State Farm policy, and (b) determined as a matter of law to also be available under Chrysler's policy, Wallace now asks the court to ignore the facts and hold that Downey was not insured.

Wallace's argument fails because there is no provision in the law by which a person can be partially uninsured. *Wolverton v. Vigilant Ins. Co.*, 52 Ohio App.2d 20, 25 (1976). Wallace correctly states the general rule that a formal written denial of coverage by a tortfeasor's insurer triggers <u>un</u>insured motorist coverage, but this rule is wholly inapplicable to a claim for the <u>under</u>insured motorist benefits.

5

Under an <u>un</u>insured motorist policy, the insurers obligation is to pay, subject to its policy limits, benefits that the insured would otherwise have collected in tort damages from the uninsured motorist. It is in effect a substitute for insurance that the tortfeasor should have had. <u>Un</u>insured motorist coverage is not excess coverage, and does not apply according to the contract terms or Ohio's UM/UIM statute when the tortfeasor motorist is indeed covered by some policy of insurance.

Wallace's reliance on *State Farm v. Alexander*, 62 Ohio St.3d 397 (1992) is misplaced. First off, *Alexander* is easily factually distinguishable because Chrysler's denial of a liability coverage obligation did not, in fact, result in Downey being uninsured. Downey always had the benefit of insurance coverage under his personal auto policy and was thus never uninsured.

Secondly, in *Alexander* the court validated the insurer's defense to liability coverage. In the case at bar, the court found (as Wallace urged) that Brian Downey was covered as a matter of law under both the Chrysler Commercial Lines Policy and the Chrysler umbrella/excess policy for purposes of liability. (Nov. 2002 order, at p. 13). Downey cannot be both "covered as a matter of law" and "uninsured" for the same accident. *Alexander* does not stand for the notion that an erroneous denial of liability coverage automatically triggers uninsured motorist coverage under the same policy, nor does it help Wallace overcome this court's finding in the November 2002 order that "the Taurus was not an uninsured vehicle under the Chrysler policy, and the Wallace estate may not collect UM/UIM benefits under the umbrella/excess policy."

Lastly, the statutory concerns underlying the *Alexander* decision (i.e., whether the household exclusion in the UM/UIM coverage could be reconciled with the UM/UIM statute) are not present in the case at bar. Instead, the November 2002 ruling that the Chrysler policies provide no UM/UIM coverage is in accord with both the policy terms and the governing statute. *Uninsured* motorist coverage, by definition, is not triggered when the tortfeasor is actually covered by insurance.

It is likewise axiomatic that *underinsured* motorist coverage does not apply when the limits of that coverage do not exceed the limits available to the tortfeasor under all liability policies.[4] Wallace mistakenly argues against application of the "exhaustion clause" in regard to underinsured motorist coverage, but the exhaustion clause is irrelevant when the coverage obligation is never actually triggered. Likewise, the question of whether an underinsured motorist insurer is prejudiced by the insured's breach of the exhaustion clause is not relevant when the coverage obligations are not triggered. Here, the court determined as a matter of law that Downey was not underinsured at the time of the accident. Wallace is not entitled to underinsured motorists coverage for the simple reason that Downey was not underinsured.

## V. CONCLUSION

For the foregoing reasons, and based also on the arguments presented in Chrysler's original brief in support of summary judgment on the cross-claim, Chrysler Insurance submits that Wallace's cross-claim is moot and that her motion for reconsideration should be denied. This court's November 2002 order on the insurance coverage issues effectively brought this case to an end. After successfully arguing in favor of liability coverage under Chrysler's policy, Wallace now seeks to reinvent her claim as solely an uninsured motorist claim. However, as this court already determined, Wallace has no UM/UIM coverage under the Chrysler policies.

Respectfully submitted,

/s/ Brian A. Meeker
BRIAN A. MEEKER (0063543)
**Reminger & Reminger Co., L.P.A.**
1400 Midland Building
101 Prospect Avenue West
Cleveland, OH  44115-1093
(216) 687-1311; fax: (216) 687-1841
bmeeker@reminger.com
*Attorney for Defendant*
*DaimlerChrysler Ins. Co.*

---

[4] Chrysler's policy defines "underinsured motor vehicle" as "a land motor vehicle or trailer for which the sum of all liability bonds or policies applicable at the time of an 'accident' provides at least the amounts required by the applicable law where a covered 'auto' is principally garaged but their limits are less than the Limit of Insurance of this coverage."

## **SERVICE**

The foregoing Motion for Extension of Time was filed on June 22, 2004 via the ECF/PACER system, with service copies automatically provided to counsel of record.

                                              /s/ *Brian A. Meeker*
                                              BRIAN A. MEEKER (#0063543)